Argued March 1, reversed and remanded April 13, 1966

# MT. HOOD STAGES, INC. *v.* HILL, PUBLIC UTILITY COMMISSIONER

### 413 P. 2d 392

*Donald A. Schafer,* Portland, argued the cause and filed briefs for appellant.

*Lloyd G. Hammel,* Assistant Attorney General, Salem, argued the cause for respondent and *Eugene R. Laird,* Salem, argued the cause for intervenor. With them on the joint brief were Robert Y. Thornton, Attorney General, Salem, and Richard W. Sabin, Assistant Attorney General, Salem.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore).

The plaintiff, Mt. Hood Stages, Inc., filed an application with the Public Utilities Commissioner for a permit to operate a passenger bus service from Eugene and Albany to Corvallis as an extension of its common carrier regular route service to central and eastern Oregon. Service is presently provided between these points by the intervenor Greyhound Lines, Inc. only. The defendant commissioner denied the application following a hearing in which Greyhound protested the issuance of the permit. In a circuit court proceeding authorized by ORS 756.580, plaintiff sought to have the

commissioner's order set aside and, under the provisions of ORS 756.610, appeals to this court from the judgment of the circuit court affirming the commissioner's order.

■ The commissioner's authority to issue common carrier permits is found in ORS 767.135, which provides that the commissioner shall issue a permit

"(4) If * * * [he] finds from the record and the evidence that:
"* * * * *

"(c) The operation proposed is in the public interest;
"* * * * *

"(e) The granting of a permit will not result in the impairment of the ability of existing operators adequately to serve the public; * * *"

ORS 756.550, entitled "Rules governing hearings; findings; orders," provides:

"(3) * * * [T]he commissioner shall prepare and enter findings of fact and conclusions of law upon the evidence received in the matter and shall make and enter his order thereon; * * *"

The commissioner in his order entered in the case at bar, stated:

"* * * The question in substance is whether the new operation or service will serve a useful public purpose; whether this purpose can and will be served to the extent required as well by existing operators and whether it can be served by Applicant with the service proposed without endangering or impairing the operations of existing carriers."

The language of the order is almost identical to the most common definition of the "public convenience and necessity" test originally stated in the first Interstate

Commerce Commission decision involving busses, Pan American Bus Lines Operation, 1 MCC 190 (1936). See Fulda, Competition in the Regulated Industries: Transportation, p. 71 (1961). That case defined the "public convenience and necessity" test as follows:

> "The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest." 1 MCC at 203.

The "public convenience and necessity" test has been expressly disavowed in Oregon. *Pierce Freight Lines v. Flagg,* 177 Or 1, 159 P2d 162; *Arrow Transportation Co. v. Hill,* 236 Or 174, 387 P2d 559.

*Pierce Freight Lines v. Flagg,* supra, was decided when our statutes provided:

> "The business of operating as a motor carrier of persons or property for hire upon the highways of this state is declared to be a business affected with the public interest, and that it is contrary to public policy and public interest that monopoly or monopolistic practices in motor transportation be permitted. * * * [P]rovided, however, that nothing in this act shall be construed as requiring or authorizing any compliance with, or an application of, any law or rule with respect to a certificate of *public convenience and necessity* as a condition to the granting of any permit authorized by this act." (Emphasis supplied.) § 115-504, OCLA.

In the *Pierce* case we held that Oregon's statutes expressed a policy of "regulated competition" as distinguished from statutes which express a policy of "regulated monopoly" by requiring an applicant to

obtain a certificate of "public convenience and necessity." The opinion said, "Our statute goes no further in its regard for existing carriers than to require the denial of an application if it proposes an operation which will be contrary to the public interest or one which will impair the ability of existing carriers to serve the public adequately." (177 Or at 63.)

When the motor carrier statutes were amended in 1947, Oregon Laws 1947, ch 467, the clause rejecting the use of the certificate of public convenience and necessity and the clause declaring a policy against monopoly or monopolistic practices were eliminated. However, in *Arrow Transportation Co. v. Hill*, 236 Or 174, 183, 387 P2d 559, we used the following language which the commissioner and the intervenor do not challenge:

> "* * * We do not regard the elimination of these clauses as indicative of a change in the legislative policy described in the *Pierce* case. The stated policy remains that of 'regulated competition * * * when it is deemed in the public interest.' *'Public interest' rather than 'public convenience and necessity'* continues to be the criteria of motor carrier permits." (Emphasis supplied.)

The commissioner and the intervenor characterize the language of the order as "perhaps unfortunate," but appear to be contending that the order should be upheld (1) because the evidence was sufficient to support it under the proper standard, and (2) because the language used by the commissioner can be interpreted as applying the correct (public interest) test.

■■ The first proposition is untenable because to accept it would be tantamount to stating that the court will examine the evidence in order to resolve opposing contentions as to what it shows and to spell out and

state such conclusions of fact as it may permit. Such is beyond the powers of judicial review conferred upon the courts by ORS ch 756. What the U. S. Supreme Court said about federal I.C.C. statutes in *United States v. Carolina Carriers Corp.*, 315 US 475, 489, 62 S Ct 722, 86 L Ed 971, is equally applicable to Oregon P. U. C. statutes:

"* * * Congress has made a grant of rights to carriers such as appellee. Congress has prescribed statutory standards pursuant to which those rights are to be determined. Neither the Court nor the Commission is warranted in departing from those standards because of any doubts which may exist as to the wisdom of following the course which Congress has chosen. Congress has also provided for judicial review as an additional assurance that its policies be executed. That review certainly entails an inquiry as to whether the Commission has employed those statutory standards. If that inquiry is halted at the threshold by reason of the fact that it is impossible to say whether or not those standards have been applied, then that review has indeed become a perfunctory process. * * * An insistence upon the findings which Congress has made basic and essential to the Commissioner's action is no intrusion into the administrative domain. It is no more and no less than insistence upon the observance of those standards which Congress has made 'prerequisite to the operation of its statutory command.' *Opp Cotton Mills, Inc. v. Administrator,* 312 US 126, 144. Hence the requirement is not a mere formal one. *Only when the statutory standards have been applied can the question be reached as to whether* the findings are supported by evidence." (Emphasis supplied.)

See also *Pierce Freight Lines v. Flagg,* 177 Or 1, 159 P2d 162; *Pacific Tel. & Tel. Co. v. Flagg,* 189 Or 370, 220 P2d 522.

■ The second proposition argued by the commissioner and the intervenor (that the language used by the commissioner can be interpreted as applying the "public interest" test) is equally without merit. The language of the commissioner in his order, "the question in substance is whether the new operation or service will serve a useful public purpose; whether this purpose can and will be served to the extent required as well by existing operators," epitomizes the "regulated monopoly" as distinguished from the "regulated competition" concept to which Oregon adheres. As pointed out in *Arrow Transportation Co. v. Hill, supra,* the "regulated competition" concept regards healthy competition as being in itself in the public interest; and therefore the public interest may be served by granting a competitive permit even if the existing permit holder establishes that it can adequately handle all traffic.

Even if it can be said that the commissioner's order was not clearly predicated on the wrong standard, the most that can be said for it is that it is incomplete. At the hearing the intervenor Greyhound introduced evidence which was obviously intended to show that the issuance of the permit to Mt. Hood Stages, Inc. would impair the operations of the existing carrier (Greyhound). On appeal the main thrust of the joint brief filed by the commissioner and the intervenor Greyhound is that the granting of the application would have impaired the operation of Greyhound. Their brief states:

"It must be remembered that adequacy of service is *not* an issue until such time as impairment has been shown. It is only then that the defendant [the commissioner] need concern himself with public demand or need for additional service, since, as is noted in the *Arrow* case, if there is no impairment of the ability of existing operators to render serv-

ice, the policy of the state is to grant the application and thereby promote competition." (Emphasis in original.)

By letter to this court subsequent to the filing of defendant's and intervenor's brief, and on oral argument, counsel for the commissioner disavowed the brief and conceded that the order did not make a finding on the "impairment" factor. Counsel for Greyhound expressed himself as "reluctant to separate himself from the position of counsel [for the commissioner] * * * ."[1]

The order makes no direct finding on the question of "impairment," but on the contrary stresses what the brief (supra) concedes is not properly an issue in the absence of a showing of impairment by stating:

"Applicant must show there are definite prospects and guarantees [a clear, present public demand] * * *. Applicant should thus demonstrate that the proposed service is needed * * *."

ORS 767.135 makes "impairment of the ability of existing operators adequately to serve the public" a material factor in determining whether a permit shall be issued. *Arrow Transportation Co. v. Hill,* supra 236 Or at 184, points out the importance of this factor, stating:

"* * * The difference between the test of 'public interest' is, obviously, one of degree, i.e., the extent to which governmental regulation will be used to inhibit free competition. * * * [T]he

[1] The oral arguments indicate that perhaps the reason for the uncertain positions of the commissioner and intervenor is some concern whether the statutory criterion "impairment of the ability of existing operators adequately to serve the public" is applicable on a system-wide or local basis, or some combination thereof. The question is not properly presented for consideration on this appeal.

policy is to protect existing carriers from the competition arising out of new permits only if there is necessity for such protection. There is no necessity for such protective regulation unless the granting of a new permit will presently or prospectively impair the ability of carriers with existing permits adequately to serve the public."

In *Valley & Siletz R. R. Co. v. Flagg*, 195 Or 683, 247 P2d 639, we stressed the need for clarity and completeness in the basic or essential findings on which administrative orders rest, quoting at length from numerous cases and texts. This case indicates that certain of those quotations need repetition.

"Davis on Administrative Law, § 158, states:

" 'A large body of judge-made law requires administrative action to be supported by adequate findings of fact, and, with respect to reasons as distinguished from findings, the Supreme Court has recently enunciated what it calls "a simple but fundamental rule of administrative law" and "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." The courts have imposed upon the agencies requirements concerning findings and reasons which go well beyond those which appellate courts have imposed upon trial courts, * * *.'

"Section 162 of the same textbook says:

" 'Even though the requirement ought not to be considered as emanating from the Constitution, the practical reasons for requiring administrative findings are impressive. Both legislatures and courts have seen fit to impose the requirement, the courts sometimes interpreting or purporting to interpret statutory provisions and sometimes creating common law. *The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative function, assuring more careful ad-*

*ministrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.'* " (Emphasis supplied.) *Valley & Siletz R. R. Co. v. Flagg,* 195 Or at 713-14.

We remand the proceeding to the circuit court with instructions to remand it to the commissioner for the entry of an order supported by adequate findings.

Reversed and remanded.