Argued October 21, remanded with instructions December 16, 1974

BEKINS MOVING & STORAGE CO. ET AL,
*Appellants, v.* PUBLIC UTILITY COMMISSIONER
(No. 389653), *Respondent,* METROPOLITAN
TRUCKING, INC., *Intervenor-Respondent.*

529 P2d 413

*Wm. G. Southwell,* Portland, argued the cause for appellants. With him on the briefs were White & Southwell, Portland.

*Lawrence V. Smart, Jr.,* Portland, argued the cause for respondents. With him on the brief were Smart & Bartsch, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

This is a proceeding under ORS ch 756 to set aside an order of the Public Utility Commissioner granting an expanded certificate of public convenience and necessity to Metropolitan Trucking, Inc. under ORS 767.135 (issuance of common carrier certificates). The plaintiffs brought suit in the circuit court under ORS 756.580 to set aside the Commissioner's order, and having there been denied the relief sought, appealed to this court under ORS 756.610.

The plaintiffs contend, (1) the Commissioner's order does not contain adequate findings of fact, and (2) if the factual findings of the Commissioner are found sufficient, the order must nevertheless be set

aside because the findings of fact are not supported by substantial evidence.

We do not reach the second contention, because we agree with plaintiffs that the Commissioner's order is not adequate.

Metropolitan is engaged in trucking household goods and appliances in the city of Portland. It sought to obtain a certificate expanding its authority to the transportation of such goods within a 20-mile radius of Portland. The plaintiffs, all of whom held permits in the area in question, protested and accordingly offered evidence supporting their protests at the hearing. Subsequent to the hearing the Commissioner entered an order granting the territorial expansion sought by Metropolitan.

■ The 1969 legislature made a substantial change in the standard by which the Public Utility Commissioner is required to judge applications for motor carrier operation permits. However, · the legislature has not changed the requirement in former ORS 756.-550, now codified as ORS 756.558 (2), providing:

> · "After the completion of the taking of evidence * * * the commissioner shall prepare and enter findings of fact and conclusions of law upon the evidence received in the matter and shall make and enter his order thereon * * *."

Thus, although the standard by which applications are to be judged is different from the standard in effect at the time previous Oregon appellate decisions in this area were handed down, nothing in the law has changed or weakened the statutory requirement for adequate findings of fact and pre-1969 appellate opinions interpreting and applying that requirement. In *Mt. Hood Stages, Inc. v. Hill,* 243 Or 283, 413 P2d 392 (1966),

the Supreme Court in interpreting and applying the statutory language set forth above, stated:

"In *Valley & Siletz R. R. Co. v. Flagg,* 195 Or 683, 247 P2d 639 [(1952)], we stressed the need for clarity and completeness in the basic or essential findings on which administrative orders rest, quoting at length from numerous cases and texts. This case indicates that certain of those quotations need repetition.

" 'Davis on Administrative Law, § 158, states:

" ' "A large body of judge-made law requires administrative action to be supported by adequate findings of fact, and, with respect to reasons as distinguished from findings, the Supreme Court has recently enunciated what it calls 'a simple but fundamental rule of administrative law' that 'the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.' The courts have imposed upon the agencies requirements concerning findings and reasons which go well beyond those which appellate courts have imposed upon trial courts, * * *."

" 'Section 162 of the same textbook says:

" ' "Even though the requirement ought not to be considered as emanating from the Constitution, the practical reasons for requiring administrative findings are impressive. Both legislatures and courts have seen fit to impose the requirement, the courts sometimes interpreting or purporting to interpret statutory provisions and sometimes creating common law. *The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative function, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction."* ' (Emphasis supplied.) *Valley & Siletz R. R. Co. v. Flagg,* 195 Or at 713-14." 243 Or at 291-92.

Because we do not decide the case at bar on the issue of what evidence is necessary to meet the current standard, ORS 767.135 (5)(c), we see no point in discussing that subject here. The current statutory standard is substantially identical to the long-standing federal standard, and there is no lack of judicial authority as to what the relevant considerations are.

■ Suffice it to say for the purposes of this case that in so far as the Commissioner's order can be construed to contain any findings of fact, those findings are not dispositive under any of the considerations deemed relevant by any authority. The "findings of fact" portion of the Commissioner's order reads:

(1) "Applicant is a family-owned corporation, with Rufus Dennis and his wife as the only members. Mr. Dennis owns one van suitable for the moving of household goods and operates out of his home. He has been in the household goods business for a number of years, and has operated as owner of his own van for approximately three years. He employs one full-time and one part-time employee and personally goes out on every job.

(2) "The main purpose of the request for extended authority is to take care of the expanding Portland area. Applicant contends that many people are moving into suburban areas of Portland, outside of the corporate limits, and it is desirous of serving these areas.

(3) "Applicant submitted the testimony of approximately 28 witnesses in its behalf. These witnesses have all used applicant's service within the corporate limits of the City of Portland. All highly praised applicant's service to the extent that they wish to use no other mover in future moves they may contemplate. Applicant has given them personal, fast and efficient service. Most of the witnesses had used other carriers in the past to move their household goods, but all found applicant's

service superior to that offered by the protesting carriers.

(4) "Some of applicant's witnesses had complaints against the service performed by various protestants, but most of these pertained to the lack of personalized service and delays in arriving. Many of the witnesses indicated that, if they could not use applicant's services, they would prefer moving themselves rather than using any other carrier.

(5) "A few of applicant's witnesses indicated that they had plans to move within a 20-mile radius of Portland within the foreseeable future, and wished to use applicant's service.

(6) "Five of the * * * protestants submitted evidence at the hearing. All have authority to transport household goods within the area of applicant's amended application. The substance of their testimony was that the transportation of household goods is quite a competitive business in the Portland area and that the entry of another household goods carrier will only make it more competitive and lead to a reduction in their business. They have equipment which is available to handle the needs of all applicant's witnesses and this equipment lies idle at least part of the time for lack of business.

(7) "The relationship between the motor carrier and the shipper in the movement of household goods is highly personal in character, and the shipper entrusts his most valuable possessions to a carrier. All applicant's witnesses expressed great satisfaction with applicant's personalized service and the desire to use the services of applicant whenever they would move again, either within or without the corporate limits of Portland."

Finding (1) describes Metropolitan's current business activities. Finding (2) merely states Metropolitan's reasons for making the application. Findings (3),

(4), (5), (6) and (7) merely summarize the evidence of the witnesses produced by the applicant and by the protestants. Nowhere in the order is there any statement by the Commissioner as to what factual conclusions he drew from the evidence.

In addition to the above findings the Commissioner's order states:

> "Applicant is seeking to serve its customers, not only in the Portland area, but in the suburban areas surrounding Portland within a 20-mile radius. It is recognized that in our present day society many people are moving from the inner city to adjoining areas. These suburban areas are an integral part of the city, both economically and socially. If the applicant is unable to comply with its shippers' needs, the value of the service which it presently renders will be greatly reduced, and it could have an adverse effect on its ability to continue to provide such service.

> "Granting of the authority sought here would have the effect of enabling applicant to serve its shippers in the suburban areas of Portland, thereby affording a more complete and convenient service to the shipping public."

It may be that by this language the Commissioner was attempting to say society is becoming so mobile that it is impracticable for a carrier in Metropolitan's type of business to serve the people of a city unless it serves that portion of the metropolitan area which goes beyond the city limits, and therefore all permittees authorized to conduct that type of business in a city must have their permits extended to the metropolitan area if the public is to be adequately served. If this was his conclusion, the evidentiary record made at the hearing does not support it and nowhere in his order did he set forth any basis for such a conclusion.

■ The rule stated in *Mitchell Bros. Trk. Lines v. Hill,* 227 Or 474, 481, 363 P2d 49 (1961), is applicable here:

> "When there are no findings of fact or they are insufficient to advise the courts of the facts found to be true to which the law has been applied, the courts will not choose between conflicting inferences and guess as to the facts which influenced the judgment of the administrative body. *Roseburg Lumber Company v. State Tax Commission* * * * [223 Or 294, 355 P2d 606 (1960)]; *Valley & Siletz R. R. Co. v. Flagg,* 195 Or 683, 247 P2d 639 [(1952)].

> "Concisely stated, the courts will not review the orders of public administrative bodies that have failed to comply with statutes requiring findings of fact and conclusions of law, but will hold orders made without meeting these requirements void."

We remand to the circuit court with instructions to remand to the Commissioner for the entry of an order supported by adequate findings.