Argued October 28, 1964, affirmed January 13, 1965

# FAHRENWALD *v.* HEMPHILL

398 P. 2d 174

*Harold A. Fabre,* Pendleton, argued the cause for appellant. On the briefs were Fabre & Collins, Pendleton.

*George H. Corey,* Pendleton, argued the cause for respondent. On the briefs were Corey & Byler and Lawrence B. Rew, Pendleton.

Before McAllister, Chief Justice, and Sloan, O'Connell, Goodwin, Denecke and Lusk, Justices.

## GOODWIN, J.

This began as a suit by a guardian to require an accounting. A fourth amended complaint prayed for cancellation of a lease. Under the terms of the lease the defendant operated a livestock ranch which was owned by the plaintiff's ward. Although the trial court refused to terminate the lease, it granted an accounting. Both parties appeal.

The record, which consists of approximately 1200 pages of typewritten material, reveals that Peter Schmidt was a successful wheat and cattle rancher,

and that L. E. Hemphill was a friend and business associate. In 1953, under a written agreement, Schmidt leased his ranch, cattle, and other related personal property to Hemphill. The agreement provided that Hemphill would operate the ranch in a good, husband-like manner, and divide the proceeds of crops and of the increase of livestock with the lessor. Without major conflicts, the parties performed under the lease until Schmidt became ill in 1957.

In 1959, Schmidt was judicially declared incompetent. See *Fahrenwald v. Wachter,* 221 Or 535, 352 P2d 152 (1960). On October 26, 1959, the plaintiff was appointed guardian of Schmidt's estate, and shortly thereafter the plaintiff guardian expressed dissatisfaction with the manner in which Hemphill was running the ranch.

This litigation began in 1961. The plaintiff demanded cancellation of the lease for two reasons: (1) because the lessee had failed to operate the ranch in a proper manner; and (2) because the lessee had fraudulently refused to account for sales of cattle.

The trial court found no proof of poor husbandry. The trial court further found that, although the lessee had failed to account for certain sales of cattle, there was no evidence of fraud in the failure to account. There was some evidence that the failure to account had been the result of inadvertence.

The court entered a decree for a $7,873.11 money judgment in favor of the plaintiff, based upon an accounting which the court had ordered earlier as an interlocutory matter.

The plaintiff appeals from that portion of the decree which denied cancellation of the lease. The defendant cross-appeals from that portion of the decree

which required him to account and which resulted in a money judgment.

■■ Because all equity cases are tried *de novo* in this court, we have made our own investigation of the record. We agree with the trial court's decision that there was no proof of poor husbandry that might, in a proper case, justify termination of a lease. We are satisfied that the trial court correctly allowed the accounting. Accordingly, we find that the defendant's cross-appeal is without merit.

■ The question of fraud presents a difficult problem. Deliberate fraud is inconsistent with the continuation of the relationship of landlord and tenant. When a pattern of dishonesty is established, and other relief does not appear to be adequate, equity will grant the extraordinary relief of cancellation. *Shell Petroleum Corporation v. Gowan,* 240 Ala 497, 199 So 849 (1941).

■■ In the case at bar, a substantial amount of evidence concerning the question of fraud came into the record under the equity rule and, presumably, was not considered by the trial court. We have had the benefit of examining that evidence as well as the evidence that was received.

Copies of income tax returns were included in the evidence which the trial court did not consider. The trial court deemed the returns irrelevant. The returns failed to show certain sales of cattle which other evidence indicated had been made. Thus, the returns tended to corroborate evidence that cattle sales may have been wilfully concealed. While the alleged omissions from the tax returns might have been the product of wholly innocent memory lapse or of inadequate records, we believe that the trial court should not

have excluded the evidence. See 2 Wigmore, Evidence 200, § 302 (3d ed 1940). In trials in which fraud is an issue, we have held that proof of acts similar to those charged, and done at or near the same time, may be received as bearing upon the question of motive, or the knowledge or intent of a party. *Carpenter v. Kraninger,* 225 Or 594, 601, 358 P2d 263 (1961); *Union Central Life Ins. Co. v. Kerron,* 128 Or 70, 79, 264 P 453 (1928).

We do not hold that the tax returns offered in the case at bar constituted proof of fraud. There is no direct evidence that the returns were fraudulent. However, the tax returns were sufficiently relevant to the question of motive that they could have been received. Had they been received, the plaintiff might have called upon the defendant to explain the apparent discrepancies or run the risk of having his other evidence viewed in an unfavorable light. While the matter could have been developed under the equity rule, the plaintiff did not press the defendant on the tax returns, and we do not know what explanation might have been given.

We have noted that the trial court should have treated the tax returns as competent evidence. It does not necessarily follow, however, that even with the tax returns included in the evidence the element of fraud in the defendant's conduct would have been established with any degree of certainty. As noted, the tax returns might have been explained as the product of an innocent mistake. The plaintiff could have pursued the matter, but did not do so.

■■ The plaintiff asserted during the trial that the defendant's failure to account amounted to outright fraud. It is a salutary rule of law that requires such an allegation to be proven by clear and convincing

evidence. The stigma of fraud is not lightly laid upon a defendant. Fraud must be established by clear and satisfactory proof. The party alleging fraud must bring forward the evidence to prove it, and may not rely upon mere suspicious circumstances or equivocal conduct. *Cays v. McDaniel et al,* 204 Or 449, 283 P2d 658 (1955); *Orsen et ux. v. Siegle et al,* 178 Or 403, 165 P2d 990 (1946).

■ In the court below, the trial judge had the advantage of observing the witnesses. He could judge their credibility in a manner that cannot be equaled here by the examination of a transcribed record. The trial court was not satisfied by the plaintiff's evidence that the defendant was guilty of fraud. We are not prepared to say that the trial judge was wrong. Accordingly, the decree must be affirmed.

Affirmed; costs to neither party.