Argued December 4, 1968, reversed with instructions
January 15, 1969

WRIGHT, *Appellant, v.* STATE INSURANCE
COMMISSIONER, *Respondent.*

449 P. 2d 419

*Robert J. Wright, in propria persona,* Springfield, argued the cause and filed briefs for the appellant.

*David J. DeMartino,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and MCALLISTER, GOODWIN, HOLMAN and MENGLER, Justices.

MENGLER, J. (Pro Tempore).

This is an appeal from an order of the circuit court affirming the insurance commissioner's order which suspended for one year the petitioner's license to sell insurance.

The parties stipulated in the circuit court that the court could assume, without deciding, that the Administrative Procedures Act, ORS 183.480, is applicable, and that the court could review the record without further evidence.

The pertinent factual background as it is recited in the findings of the insurance commissioner are: During 1962-1964 petitioner was a general agent for ICOA, a life insurance company. On December 17, 1964, petitioner's license was terminated. The petitioner requested a hearing on the charge that he had violated ORS 736.465(1)(d) and (e), and ORS 739.555 (1) by means of various misrepresentations concerning policies of insurance sold. The matter was heard several times before the insurance commissioner, and on June 17, 1966, he entered "Findings of Fact Conclusions of Law and Order."

The insurance commissioner found that the petitioner made a series of representations, each of which

violated ORS 736.465(1)(d) and (e) and ORS 739.555 (1). The insurance commissioner concluded that the findings of misrepresentation were at least partly mitigated by the fact that the representations made by the petitioner were, at least in part, based on material and training furnished by ICOA, and that the public interest could be adequately protected without further suspension of the right of the petitioner to practice his profession as a life insurance agent. The insurance commissioner ordered on June 17, 1966 that petitioner's application for a license be processed.

Petitioner mailed a letter, prepared and signed by him, to 40-50 policyholders concerning insurance policies which they had purchased through him, or his agents, from ICOA.

Effective August 12, 1966, under the provisions of ORS 183.430(2), petitioner's license was again suspended by the insurance commissioner. Petitioner requested a hearing before the insurance commissioner on the charge that he violated ORS 736.465(1)(e) and (f) and ORS 736.820 which prohibits unfair trade practices as defined in ORS 736.815, subsections (3), (4) and (5).

ORS 736.465(1)(e) and (f) provided as follows:

"(1) The commissioner, after notice, and for cause shown shall revoke, or suspend for not exceeding one year, the license of any agent or solicitor, or refuse to renew any agent's or solicitor's license on application therefor, or refuse to issue any agent's or solicitor's license upon an original application therefor, if it is evident that:

"(e) The agent is conducting his business in such a manner as to cause injury to the public and those dealing with him, or has violated any provision of the insurance laws of this state;

"(f) The conduct of the agent or solicitor has

been such that if he were then applying for a license as an agent or solicitor his application should be denied ° ° °."

ORS 736.815 provided in part as follows: ·

"The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
"° ° ° ° ° ·

"(3) ° ° ° making any misleading representation or any misrepresentation as to the financial condition of any insurer, ° ° ° or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance.

"(4) Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading. · ·    ·

"(5) Making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting or encouraging the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature which is false, or maliciously critical of or derogatory to the financial condition of an insurer, and which is calculated to injure any person engaged in the business of insurance."

ORS 736.820 provided as follows:
· · "No person shall engage in this state in any trade practice which is defined in ORS 736.815 as

an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

After hearing, the insurance commissioner, in "Finding of Fact Conclusions of Law and Order," dated December 19, 1966, found that petitioner:

(1) Signed and mailed a letter to 40 or 50 ICOA policyholders. The letter follows:

"1974 North 16th Street
Springfield, Oregon 97477

"ICOA Policyholder:

"Remember the coupon policy that you purchased from the ICOA Life Insurance Company of Salem, Oregon. The one where the salesman told you what a fantastic investment it would be—TAX-FREE DIVIDENDS, SIMILAR TO STOCK, ABSOLUTELY GUARANTEED BY CONTRACT. You know the story that you heard.

"These policies were misrepresented to you and you are entitled to get your money back *plus* interest. You will, however, need the services of a good attorney. If you will either write to me or call me on the telephone, I will give you the name of an attorney in your area that is familiar with these cases and who has all the necessary evidence to win your case.

"Don't blame the agent that actually sold you this program. The sales literature and method of presenting it was furnished to him by the company. He sold it in the manner in which management instructed it to be sold. Some of the literature and the method of presenting it has proven to be erroneous and contained numerous misrepresentations. These are the exact reasons why our State Insurance Department ordered this type of policy to be removed from the Oregon market.

"The ICOA Life Insurance Company acquired approximately 80% of its growth through the sale

of this type of program. Naturally, they would have liked to continue to deceive the public and even went so far as to file an injunction against our State Insurance Commissioner in hopes that they could continue to sell this policy. Although the court upheld ICOA, our legislature passed new laws granting the Insurance Commissioner the authority that he needed to stop ICOA's sales practices.

"On July 15, 1966, a judgment, in the amount of $5,477.63, was obtained against the ICOA Life Insurance Company. $794.13 of this amount represents 6% interest from the time the policies were originally purchased.

"File your suit soon. There may NOT be enough money to satisfy the latecomers.

Sincerely Yours,

/s/ Robert J. Wright
Robert J. Wright
Ex-ICOA General Agent

"P.S. Phone 746-1984. No Collect Calls Please."

(2) Intended to mail the letter to over 2,000 ICOA policyholders.

(3) Did not have personal knowledge that his agents misrepresented the policies.

(4) Mailed a personal letter as follows:

"Memo

"TO: Ted Jaross

"FROM: Bob Wright

"SUBJECT: ICOA

"Cant [sic] fight them any longer. So I decided to break them. Im [sic] selling my stock before the price goes down to 5¢.

"The enclosed letter is going out to over 2,000 policyholders. and everyone of them should collect.

"* * * * *

"I doubt very much if ICOA will even exist 12 months from now. Im [sic] notifying all my friends to enable them to get a head start on the rush. Thanks for your support in the past.

Sincerely yours
/s/ Bob Wright"

(5) The letter mailed to 40 or 50 ICOA policyholders was misleading, maliciously critical and derogatory to the financial condition of ICOA.

(6) ICOA had a capital and surplus of $742,405.36 as of September 30, 1966.

(7) Caused a policyholder to whom the letter was mailed to be dissatisfied, to believe the policy was misrepresented, and to believe the company was about to go out of business.

(8) Placed the financial condition of ICOA in doubt in the mind of a policyholder who received the letter.

(9) Did not cause another policyholder to be dissatisfied with his policy or to believe the policy to be misrepresented.

■ ▪ The role of this court on appeal is: (1) to determine whether the evidence received at the hearing substantially supports the finding of basic facts by the insurance commissioner; (2) to determine whether the basic facts found and supported by substantial evidence reasonably support the inferences of ultimate fact made by the agency; and (3) to decide whether the insurance commissioner correctly applied the law to the ultimate facts reasonably inferred by him from the basic facts. The matter is not tried *de novo*. *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558 (1963).

■ Every decision or order adverse to petitioner

rendered by the insurance commissioner is required to be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the determination of each contested issue of fact. ORS 183.470.

In order for the insurance commissioner to conclude that petitioner violated the provisions of ORS 736.465(1)(e) and (f) he would have to make basic findings of fact from which could be inferred the ultimate fact that: (e) he was conducting his business in such a manner as to cause injury to the public and those dealing with him, or had violated the insurance laws of this state; (f) his conduct was such that if he were applying for a license, his application would be denied.

■ It must be noted that on June 17, 1966, the insurance commissioner found that petitioner violated ORS 736.465(1)(d) and (e), but that his conduct prior to that date was not such as would deny him a license if he were then applying. Only such conduct as occurred between June 17, 1966, the date of the reissuance of the license and the date of the second suspension, August 12, 1966, could be the basis for new findings of fact under ORS 736.465(1)(e).

In order for the insurance commissioner to conclude that the petitioner violated the provisions of ORS 736.820, ORS 736.815(3), (4) and (5) he would have to make basic findings of fact from which could be inferred the ultimate facts that petitioner: (3) made a misleading representation or misrepresentation as to the financial condition of ICOA or made a misrepresentation to a policyholder inducing, or tending to induce, him to terminate the policy; (4) circulated a letter containing untrue, deceptive, or misleading statements; and (5) circulated the letter and that it was

false, maliciously critical, or derogatory to the financial condition of ICOA, and was calculated to injure ICOA. The insurance commissioner, based upon his findings, concluded that the petitioner violated ORS 736.820, supra; the unfair trade practices defined and prohibited in ORS 736.815(3), (4) and (5); and ORS 736.465(1)(e) and (f), supra.

■ The only ultimate finding of fact made by the insurance commissioner which lies within any of the statutory prohibitions is his finding number (5) to the effect that the letter mailed by petitioner was misleading, maliciously critical and derogatory to the financial condition of ICOA. Apparently the insurance commissioner relies on ORS 736.815(5), which prohibits the circulating of a written statement which is (a) false, or (b) maliciously critical of or derogatory to the financial condition of any insurer *and which is calculated to injure any person engaged in the business of insurance.* The insurance commissioner found the ultimate fact that the letter circulated was maliciously critical of or derogatory to the financial condition of the insurer, but he did not find the ultimate fact of calculated injury to any person engaged in the business of insurance. The finding is obviously incomplete. It is not therefore necessary for us to consider whether the finding of ultimate fact that the letter was maliciously critical of or derogatory to the financial condition of any insurer is properly inferred from basic facts and is supported by the evidence.

■ The findings of fact of the insurance commissioner are incomplete, largely conclusory in character and lacking in setting out the complete basic findings, such as the dates of the letters, from which the inferences were made which led to the conclusions. The

findings of fact are insufficient to advise this court of the ultimate facts to which the law was applied. This court cannot weigh the evidence, make its own basic findings, and infer its own ultimate findings of fact. In *Valley & Siletz R.R. Co. v. Flagg,* 195 Or 683, 247 P2d 639 (1952), and more recently in *Mt. Hood Stages, Inc. v. Hill,* 243 Or 283, 413 P2d 392 (1966), this court emphasized the requirement that the administrative fact-finding agency make clear and complete findings of basic fact, so that the reviewing court can determine whether (1) the basic facts are supported by evidence, and (2) whether the required ultimate fact can be reasonably inferred from the basic facts.

The judgment of the circuit court is reversed with instructions to remand to the insurance commissioner for further proceeding consistent herewith.