Argued September 19, 1969, affirmed as modified
March 5, 1970

# BERNARD, *Respondent, v.* BOARD OF DENTAL EXAMINERS, *Appellant.*

465 P2d 917.

Robert M. Christ, Executive Secretary, Oregon State Board of Dental Examiners, Portland, argued the cause for appellant. On the brief were Robert Y. Thornton, Attorney General, and Louis S. Bonney, Assistant Attorney General, Salem, and Alex L. Parks, Portland.

Robert D. Steinmetz, Portland, argued the cause for respondent. With him on the brief were Rives & Schwab and Herbert M. Schwab, Portland.

Before LANGTRY, Presiding Judge, and FOLEY, FORT and BRANCHFIELD, Judges.

FORT, J.

The State Board of Dental Examiners brought charges of fraud and misrepresentation in obtaining fees for dental services against respondent, a licensed practicing dentist in Oregon.

The charges arose out of services performed for three patients. We note at the outset that the state does not contend that Dr. Bernard failed in any respect to perform the work which he contracted to do for each of these patients. It does not accuse this

dentist of performing work not professionally necessary, nor does it claim that any of the work he did or caused to have done for his patients was done other than in full compliance with accepted dental practices.

The "fraud and misrepresentation" alleged relates to a matter collateral to a dentist's professional activity—namely, to the payment of his fees. This aspect of the doctor-patient relationship is one normally governed by the law of contracts. No claim is made that any of his charges were excessive, were unearned, or were not owed to Dr. Bernard by the patient in question. It is conceded that he did all the work for which he charged. No breach of the contract between himself and his patient is claimed.

Since this matter was tried in the court below on the assumption that the charges frame a justiciable issue under ORS 679.140(2)(b), we will so treat it. In so doing we do not therefore decide whether the legislature intended to regulate more than the doctor-patient relationship by that provision or whether it intended thereby to extend appellant's regulatory powers to include supervision over the dentist in his relationship with third parties with whom he has no contractual relationship, such as the patient's insurance company.

All three patients were members of the Food & Drug Clerks Union. This union entered into a contract of insurance with the Investors Insurance Corporation on behalf of its members for specified dental work ordered by eligible members of the union from licensed dentists of their own choosing.

The arrangement is described in respondent's brief:

"* * * Persons eligible to receive benefits are required to complete a claim form furnished

by Investors Insurance Corporation. The form contains two parts: Part I is a certification to be signed by the employee. Part II contains a certification to be signed by the attending dentist, certifying as to the performance of services in accordance with a chart which lists the nature of the service, the date performed and the fee claimed by the dentist for each type of service. The form requires that it be sent to Mr. Henry Spivak, the Administrator of the Plan.

"The procedure requires that Mr. Henry Spivak verify the eligibility of the employee. To be eligible the employee must be a member of the union, and be employed by a participating employer and actually working for the employer at the time the services were performed. If the employee is eligible, Mr. Spivak initials the claim and sends it to the insurance company for payment. Investors Insurance Corporation examines the completed claim and establishes the fee to be paid for each type of service listed on the chart found in Part II of the form.

"The claim form provides that no assignment of benefits shall be valid. However, the Board of Trustees of the Dental Trust approved of a plan whereby payment was made directly to the attending dentist when the employee had assigned the benefits to the dentist and the assignment was sent in with the claim form. The benefits payable under the claims of Opal Millard, Joan Stewart and Marcus Hempel were so paid to the plaintiff."

It is uncontradicted that this was a new insurance company-labor-management program. It went into effect March 1, 1965; an additional portion of the union's members became covered on June 1, 1965. None of the agreements between these parties setting forth rights, duties and legal relationships among them are in evidence. The rights of each of Dr. Bernard's patients are defined by these. Dr. Bernard was not

a party to any of these. There is nothing in the record to show he knew or had any right to know their content or their meaning.

In the course of the proceedings before the board, the "accused," as the board's brief refers to Dr. Bernard, by timely motion sought to take the deposition of Mr. L. M. Elkins, the chief investigator for appellant, who under oath had verified the complaint against Dr. Bernard. The motion also sought an order directing Mr. Elkins to produce "for the purposes of inspection and copy all of the books, papers, accounts, documents and testimony pertaining to the matters under investigation," and further for those of the foregoing "to be used directly or indirectly at the time of the hearing set forth based upon the accusations and charges pending against Dr. Lawrence Bernard herein * * * ."

The appellant denied the foregoing motion in its entirety on the ground that "There is no statutory or administrative-rule authority for the allowance of such a motion * * * ."

The board referred the matter to its hearing examiner. Three volumes of testimony and numerous exhibits comprise that record. The hearing examiner entered as his Conclusions of Law:

"The accused wilfully and knowingly, by fraud and misrepresentation, presented claims for dental services rendered to said Marcus W. Hempel, Opal E. Millard and Joan A. Stewart, to the Administrator of the Food and Drug Clerks Dental Plan, with respect to services rendered on dates therein alleged, and by means of said false representations did obtain the sum of $1,123.20 from the Investors Insurance Company, the insurance company providing insurance coverage for the dental plan, contrary to ORS 679.140 2 (b)."

Thereafter, the board, based upon the Findings and Conclusions of the hearing examiner, entered its order:

"(1) That the Board approves and does hereby adopt the Findings and Conclusions of the Hearings Examiner in their entirety;

"(2) That the accused shall be and he hereby is found guilty as charged on all counts set forth in the Charges filed herein; and

"(3) That his license be and the same hereby is revoked ＊ ＊ ＊."

Dr. Bernard then sought judicial review of this order. The circuit court, after hearing, entered its Findings of Fact and Conclusions of Law. So far as relevant to the issues here, these were:

"1. The charges in respect to plaintiff's alleged professional misconduct with Opal Millard and Joan A. Stewart are unsupported in the record by any substantial legal evidence. The defendant Board's action imposing sanctions for this alleged misconduct was erroneous and is therefore set aside.

"2. ＊ ＊ ＊ [The board concedes that the trial court correctly reversed its order here involved.]

"3. ＊ ＊ ＊ [The board concedes that the trial court correctly reversed its order here involved.]

"4. Plaintiff was entitled to take the deposition of Leslie M. Elkins, Chief Investigator of the defendant Board in accordance with plaintiff's motion. The defendant Board's action in denying the plaintiff's motion to take Mr. Elkins' deposition deprived plaintiff of the opportunity to fully prepare his defense in the proceedings below. Therefore, the Board's action in this case is reversed and remanded for further proceedings not inconsistent with this decree."

and by its decree provided:

"1. That the said order entered by the defend-

ant Oregon State Board of Dental Examiners on October 29, 1966, be and the same is hereby in all respects reversed and remanded for further proceedings not inconsistent with this decree.

"2. That the license to practice dentistry within the State of Oregon heretofore issued to the plaintiff is hereby ordered reinstated."

The board appeals from the above, asserting the trial court erred in setting aside its findings of fraud and misrepresentation concerning Mrs. Millard and Mrs. Stewart, and in remanding the case to allow the taking of the deposition of its chief investigator, the complainant herein.

■ The charge of fraud and misrepresentation concerning the obtaining of a fee for services rendered to Marcus Hempel was not directly ruled on by the trial court. Instead it sent the matter back to the board to comply with the court's order to allow the taking of the deposition of Mr. Elkins concerning this matter. We agree with the trial court that Dr. Bernard had the clear right to take the deposition of the complaining witness, Mr. Elkins, and that it was error for the appellant to deny him this right.

The appellant contends that because the motion also sought therein documents, some of which he might not be entitled to, whether because of a valid privilege, because of possible irrelevance to the issues involved, because of claim as "work products," or other appropriate reason, its denial was proper.

The board further contends the motion to take Mr. Elkins's deposition was properly denied because it was utterly devoid of any "proper showing of general relevance or reasonable scope of the evidence

sought" as required by the board's own Model Rules of Administrative Procedure.

Mr. Elkins was the complainant who under oath. had accused Dr. Bernard of obtaining fees by fraud and misrepresentation in each of the three specific cases alleged. As such he was the complaining witness. He swore in that complaint that he was the board's chief investigating officer.

The Model Rules of Administrative Procedure adopted by the board provide that its rules of evidence "shall conform, to the extent practicable, with those in civil non-jury cases in the circuit courts," unless otherwise provided. Rule 15(5)(a). ORS 45.151 provides that a deposition may be taken of "any person, witness, or party."

The claim of the board that Dr. Bernard must here show the "general relevance" of his proposed inquiry of the complaining witness before he may take his deposition is without merit. The law presumes that in a license revocation hearing, the testimony of the complaining witness, like that of a party, is of sufficient relevance to matters of which he has under oath formally complained to warrant his examination by the accused.

■ We are not here concerned with whether a particular question need be answered or even whether a general line of inquiry is relevant to the issues. We hold only that the testimony of the complaining witness in a license revocation case is of such "general relevance" under ORS 183.440 as to entitle the accused to a subpoena thereunder.

In an administrative proceeding that has as a possible consequence the destruction of a man's right

to earn a livelihood in his profession and the disgrace attendant thereon, the accused is, under concepts of fundamental fairness, entitled to the right and opportunity reasonably to probe beneath the murky veil of administrative rectitude.

In *Wright v. Insurance Commissioner*, 252 Or 283, 449 P2d 419 (1969), the Supreme Court stated:

"The role of this court on appeal is: (1) to determine whether the evidence received at the hearing substantially supports the finding of basic facts by the insurance commissioner; (2) to determine whether the basic facts found and supported by substantial evidence reasonably support the inferences of ultimate fact made by the agency; and (3) to decide whether the insurance commissioner correctly applied the law to the ultimate facts reasonably inferred by him from the basic facts. The matter is not tried *de novo*. *Bay v. State Board of Education*, 233 Or 601, 378 P2d 558 (1963).

"Every decision or order adverse to petitioner rendered by the insurance commissioner is required to be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the determination of each contested issue of fact. ORS 183.470." 252 Or at 290-91.

We note this case was decided after the decisions in the case at bar both by the board and by the trial court. We are of course bound by it.

The court also stated:

"* * * In *Valley & Siletz R.R. Co. v. Flagg*, 195 Or 683, 247 P2d 639 (1952), and more recently in *Mt. Hood Stages, Inc. v, Hill*, 243 Or 283, 413 P2d 392 (1966), this court emphasized the requirement that the administrative fact-finding agency make clear and complete findings of basic fact, so that the reviewing court can determine whether

(1) the basic facts are supported by evidence, and (2) whether the required ultimate fact can be reasonably inferred from the basic facts." 252 Or at 293.

Thus we next consider the facts, both ultimate and basic, found by the board. So far as each of the three charges is concerned, the board found as ultimate fact:

"(2) The accused certified to and presented the claim of Opal E. Millard to the Investors Insurance Company with the knowledge that it contained false information as to the date of services for examination, diagnosis and x-rays. He received payment for said services based on false information.

"(3) The accused certified to and presented the claim of Joan G. Stewart to the Investors Insurance Company with the knowledge that it contained false information as to the date of services for examination and diagnosis. He received payment for said services based on false information.

"(4) The accused presented the claim of Mr. Marcus W. Hempel to the Investors Insurance Company with the knowledge that it contained false information as to services for examination, diagnosis, x-rays, surgery, and insertions. He received payment for said services based on false information."

The Ultimate Findings of Fact do not state that the "false information" was placed there with any intent to defraud or misrepresent or to obtain a reimbursement from the insurance company *to which Dr. Bernard knew his patient was not entitled.* No finding of basic fact does either.

It is apparent that if there was an obtaining of fees "by fraud and misrepresentation," as the accusation charges, it must have been from the Investors

Insurance Corporation. None of the patients were defrauded. None of them claim to have been. Neither does the Food & Drug Clerks Dental Trust. Indeed its board of trustees formally advised appellant before the filing of these charges by Mr. Elkins on behalf of the appellant:

"* * * We further wish to inform you that the Board does not wish to become a moving party in any legal action you might contemplate involving Dr. Bernard, Marcus Hempel, Opal Millard or Joan Stewart."

The evidence is uncontradicted that a Mr. Horner, who was an assistant to the company's president, was the responsible representative of the Investors Insurance Corporation in the development and implementation of the dental plan contract with the Food & Drug Clerks Union. The company president did not testify. Mr. Horner reported only to him. The secretary-treasurer of the insurance company testified. He, however, did not become a full-time employe of the company until after the period here in question. He played no part in the administration of the dental plan. He was then a practicing attorney who, though serving as secretary-treasurer and general counsel on a part-time basis, had his office elsewhere. He saw Mr. Horner "infrequently" during this period, only "when I happened to be over at the company." He testified concerning Mr. Horner that "He handled this dental program that is under discussion here by himself," and

"Q But once the contract [referring to the Food & Drug Clerks Union Dental Agreement] was entered into he was in charge of the handling of the program, was he not?

"A Oh, yes, processing of the thing."

Mr. Horner testified that the dental plan was a new program that none of the participants had had previous experience with. The claims in question were all filed in the first days of its operation. The insurance company, he said, at the time it entered into the agreement with the union, knew and expected some employes "would stall off some dental work," that such did in fact happen on several occasions, and that the company took this probability into consideration in setting up the program. Concerning the likelihood of the company having to pay for some services actually begun or performed before the effective eligibility date of a particular employe, he stated:

"* * * [W]e probably had dozens and dozens of benefits that was performed prior to the effective date of the person's eligibility *which we took as a calculated risk and threw it in and paid the claims*. If we investigated all of them we would still be investigating. We didn't have the time to do it." (Emphasis supplied.)

At one time during the carrying on of the board's investigation, Mr. Elkins, its chief investigating officer, contacted Mr. Horner concerning the case of Mrs. Millard. On cross-examination by the board's attorney, Mr. Horner testified:

"Q When you met with Mr. Elkins did he demonstrate and show to you the laboratory reports which indicated that at least the impressions and the dentures were made prior to the date of eligibility on Mrs. Millard?

"A He showed them to me, yes.

"Q And based on that information you didn't think that was sufficient to pursue it?

"A No, because I didn't have the time or we didn't want to exert the effort to go into a long investigation. If we did—if we had investigated

every claim form that was filed on this dental claim and if they were acted on and scrutinized to the extent that this one is, there would be very few dentists operating in the State of Washington —or I mean in the City of Portland."

The board sought to impeach the testimony of Mr. Horner by showing that he left the employ of the insurance company on October 15, 1965, and that he was indebted to Dr. Bernard on a personal note from July 13, 1964, during the entire period in question and up to and including the time of the hearing. This, however, does not affect the *uncontradicted* evidence that Mr. Horner was the authorized agent of the company in the development and handling of the dental plan and the processing of claims thereunder after its adoption and was duly authorized to act in that capacity. Whether or not Mr. Horner correctly construed on behalf of his employer the contract it had with the Food & Drug Clerks Dental Trust is not before us. There is no claim that Dr. Bernard conspired with Mr. Horner to defraud the insurance company.

The burden of the offense charged is the obtaining of a fee *as the result of* fraud or misrepresentation. It is undisputed that in both the Millard and the Stewart cases the major part of the work was done after the employes' eligibility date under the contract, including all surgical work and the furnishing and installation of prosthetic devices for the patient.

The examiner, in his Ultimate Findings of Fact, pointed out that Mr. Horner's testimony "might mitigate the misrepresentation" shown on the claims of Mrs. Millard and Mrs. Stewart, but concluded that since the dates for the preliminary work were "false," this deprived the insurance company of a possible

opportunity to investigate. Even if it had been investigated, however, there is no substantial evidence in the record from which it can be found that work begun but not completed on the eligibility date was not intended to be covered by the contract or would not have been paid.

■ The question is whether Dr. Bernard received payment of his fees on these two claims as a result of the "false" statements certified by him. In the absence of clear and convincing evidence that the employe in fact would not have received reimbursement for the entire work done by Dr. Bernard, including preliminary work performed prior to the eligibility date, it cannot be said that the reimbursement was made as a result of the false information. No such finding of fact was made. The trial court correctly concluded that the charges concerning Mrs. Millard and Mrs. Stewart were "unsupported in the record by any substantial legal evidence."

There remains to be considered only the charge arising out of the Marcus Hempel matter. It is uncontradicted that Dr. Bernard did not sign or initial this claim for reimbursement. It is also uncontradicted that for any claim to be entitled to reimbursement under the dental plan, the signature and certification of both the patient and the dentist must have appeared in the spaces provided therefor. The claim form as submitted was insufficient on its face to entitle Dr. Bernard, Mr. Hempel or anyone else to reimbursement for dental services.

The board concluded, however, that because Dr. Bernard knowingly mailed the form containing dates, which it found to be false, showing that the services

were rendered after the eligibility date of Mr. Hempel was itself sufficient to sustain its ultimate finding.

■ It is elementary that fraud or misrepresentation is never presumed and that even in a civil action the burden is on the person claiming it to establish its existence by clear, satisfactory and convincing evidence. *Cays v. McDaniel et al,* 204 Or 449, 452, 283 P2d 658 (1955); *Fahrenwald v. Hemphill,* 239 Or 421, 398 P2d 174 (1965).

■ The rule in license revocation proceedings requires at least this standard. 7 Am Jur 2d 89, Attorneys at Law § 67 (1963). The Supreme Court, in a license revocation matter concerning an attorney, stated:

> "Thus, the degree of proof need not be beyond a reasonable doubt as the defendant contends in his seventh assignment of error. However, this court has ruled that it must be something more than a mere preponderance of evidence, and has expressed the needed extent of persuasion by saying that the evidence must be clear and convincing. * * *" *In re J. Kelly Farris,* 229 Or 209, 219, 367 P2d 387 (1961).

We think it has equal application to revocation of a dental license.

Since there is nothing in the basic findings of fact to support a conclusion that this standard of persuasion was applied by the appellant or by the examiner, it follows that the ultimate finding of the board that Dr. Bernard obtained fees by fraud and misrepresentation in the Marcus Hempel matter must also be set aside. *Wright v. Insurance Commissioner,* supra. In the absence of such finding it is unnecessary to decide whether when measured by that standard there

was sufficient legal evidence to support the board's finding in the Hempel matter.

The case is remanded to the circuit court with instructions to modify its decree by also dismissing the Marcus Hempel matter. Since there is then nothing before the board, the order returning the cause to it to allow the taking of the deposition of Mr. Elkins should, for that reason only, also be set aside. It is so ordered.

Affirmed as modified.