Argued and submitted September 8, reversed December 30, 1980

ADAMS,
*Petitioner/Respondent,*
*v.*
PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent/Petitioner.*

(No. 79-189, CA 15065, SC 27058)

621 P2d 572

Lisa Brown, Assistant Attorney General, Salem, argued the cause for respondent/petitioner. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and W. Benny Won, Assistant Attorney General, Salem.

Susan Longbrook, Portland, argued the cause for petitioner/respondent. With her on the brief was Stephen M. King, Portland.

Before Denecke, Chief Justice, and Tongue, Howell**, Lent, Linde Peterson and Tanzer, Justices.

TANZER, J.

---

**Howell, J., retired November 30, 1980.

## TANZER, J.

This case involves the sufficiency of an order of the Psychiatric Security Review Board (PSRB), following its initial hearing, committing petitioner to the Oregon State Hospital for care, custody and treatment. The Court of Appeals vacated the commitment pursuant to ORS 183.480 *et seq* and we allowed PSRB's petition for review.

On March 9, 1979, a jury found petitioner to be not responsible for murder by reason of a mental disease or defect. The trial court ruled that petitioner would have been convicted of manslaughter in the first degree if she had been found responsible. The trial court found that petitioner presently had a mental disease or defect and was substantially dangerous to herself and others. It placed her under the jurisdiction of PSRB for a maximum period of 20 years and ordered her committed to the Oregon State Hospital pending a hearing before PSRB.

On April 6, PSRB held its initial hearing to determine whether petitioner should be confined or conditionally released. By order of May 3, it found that petitioner was affected by a mental disease or defect, that she presented a substantial danger to herself and others and that she could not be adequately controlled if she were conditionally released. It therefore ordered her committed to the Oregon State Hospital.[1]

---

[1] The May 3, 1979 order of PSRB states:

"The Board, having heard testimony and having received exhibits and after considering all of the evidence admitted on the record, finds as fact by a preponderance of the evidence that:

"1. Mary Alice Adams was found not responsible by reason of mental disease or defect of the crime of MANSLAUGHTER IN THE FIRST DEGREE, and was placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment for a period of time not to exceed twenty (20) years by Marion County Circuit Court Judge Pro Tem Darrell J. Williams.

"2. Mary Alice Adams is affected by a mental disease or defect, namely SCHIZOID PERSONALITY WITH ACUTE PSYCHOTIC EPISODES as demonstrated by the underlying facts shown by the evidence including: the evaluations by Dr. Stolzberg, M.D. and others who saw clear evidence of Ms. Adams' psychotic thought processes, emotional disturbance and impaired impulse control.

Petitioner petitioned for judicial review of the order, contending (1) that the findings of mental disease or defect and dangerousness were not supported by substantial evidence, and (2) that the standard of proof by a preponderance of the evidence for discharge from PSRB jurisdiction pursuant to ORS 161.351 was an unconstitutional deprivation of due process and equal protection. The Court of Appeals held that the challenged findings were not supported by substantial evidence and ordered petitioner discharged from PSRB jurisdiction. It did not reach the constitutional issue. The state petitioned for review, contending that the findings were supported by substantial evidence and that the Court of Appeals misconstrued the allocation of burdens of proof under former ORS 161.351. Because we have not hitherto examined the procedures of PSRB under former ORS 161.325 to 161.351, we allowed the petition.[2]

---

"3. Mary Alice Adams presents a substantial danger to herself as demonstrated by the underlying facts as shown by the evidence including her past history of suicide attempts.

"Ms. Adams presents a substantial danger to others as demonstrated by the underlying facts shown by the evidence including: the circumstances surrounding the crime of Manslaughter, for which she was placed under the jurisdiction of the Board and which included her shooting the victim with a shotgun.

"4. Mary Alice Adams could not be adequately controlled with supervision and treatment if she were conditionally released into the community at this time.

"5. Necessary supervision and treatment is not now available in the community.

"The Board concludes as a matter of law that:

"1. Mary Alice Adams, being affected by a mental disease or defect and presenting a substantial danger to herself and others, is under the jurisdiction of the Psychiatric Security Review Board.

"2. The necessary supervision and treatment not being available, it would not be in the best interests of justice, the protection of society or the welfare of Mary Alice Adams to release her at this time.

"IT IS HEREBY ORDERED, that Mary Alice Adams be committed to the Oregon State Hospital for care, custody and treatment."

[2] The statutes were amended by Oregon Laws 1979 ch 867 and ch 885. All statutory references in this opinion are to the statutes in their 1977 form unless otherwise specified; the pertinent 1979 amendments are detailed in these footnotes.

Because this is a review under the Administrative Procedure Act of PSRB's order concluding its initial hearing and not an appeal from the order of the trial court, we must first sort out the authority and responsibilities assigned by the legislature to the court and to the PSRB respectively. We must then sort out what is at issue before PSRB at its initial hearing as distinct from matters at issue at later hearings during PSRB's continuing supervision.

The statutes in effect at the time of the initial hearing were inconsistent in several respects, but the statutory scheme as a whole was clear and any inconsistencies material to this case can be resolved in light of that statutory scheme. In summary, the trial court, upon appropriate findings, had the duty to commit the defendant to PSRB for a term of years. PSRB was required to commit the person to a state hospital unless it determined that he could be conditionally released.[3] Thereafter, PSRB was and remains authorized to transfer a person from one status to the other or to discharge the person.

To particularize, when a criminal defendant was found not responsible due to mental disease or defect, the trial court was required to make a determination. If the court found the defendant to be no longer affected by mental disease or defect or, if affected, to be no longer dangerous or in need of care, supervision or treatment, the court was required to order the defendant discharged from custody. ORS 161.325, 161.329.[4] If, on the other hand, the court found that the defendant was still affected by mental disease or defect and that the defendant presented a danger which required hospital commitment or conditional release, then ORS 161.325 and 161.336(1) required that the court commit the defendant to the PSRB for a term corresponding to the maximum sentence the defendant would have received had he been found responsible. The responsibility of the court ended and that of PSRB commenced with the order of commitment to PSRB jurisdiction.

---

[3] In 1979 the statutes were amended to give this initial dispositional decision formerly handled by PSRB to the trial court. For specifics, see fn. 5

[4] ORS 161.325 provided:

Within 20 days of the commitment, PSRB was required to hold an initial hearing to decide whether the person should be committed to a state hospital or conditionally released.[5] The initial hearing was not an appeal from the circuit court. ORS 161.336(1) did not authorize PSRB at the initial hearing to review or redetermine the trial court finding of mental disease or defect and dangerousness. PSRB's function at that stage was essentially dispositional. This division of responsibility between the court and PSRB was clearly marked in ORS 161.336(1) which provided:

"Following the entry of a judgment pursuant to ORS 161.319, if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and that he presents a substantial danger to himself or others that requires that the person be committed to a state mental hospital designated by the Mental Health Division or conditionally released, the court shall order him placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment. The period of jurisdiction of the board shall be equal to the maximum sentence the court finds the person could have received had he been found responsible. The board shall hold a hearing within 20 days to determine whether the person should be committed or conditionally released. Pending hearing

———————

"After entry of judgment of not responsible due to mental disease or defect, the court shall, on the basis of the evidence given at the trial or at a separate hearing, if requested by either party, make an order as provided in ORS 161.329, 161.336 or 161.341, whichever is appropriate. If the court makes an order as provided in ORS 161.336, it shall also determine on the record what offense the person would have been convicted of had the the person been found responsible."

ORS 161.329 provided:

"If the court finds that the person is no longer affected by mental disease or defect, or if so affected, that he no longer presents a substantial danger to himself or others and is not in need of care, supervision, or treatment, the court shall order him discharged from custody."

These statutes remain substantially the same. The only change is a reference to the new statute which gives the trial court the initial dispositional decision.

[5] In 1979 the statute was amended to eliminate the 20-day hearing by the PSRB and to put the initial decision whether to commit or conditionally release into the hands of the trial court. The responsibility of the trial court for the initial dispositional decision is now numbered ORS 161.327.

before the board, the person may be committed to a state hospital designated by the Mental Health Division."[6]

The policy controlling the disposition at the initial hearing and later proceedings was expressed in ORS 161.336(11):

"In determining whether a person should be committed to a state hospital, conditionally released or discharged, the board shall have as its primary concern the protection of society."[7]

The statutes also specified the conditions under which PSRB was to make either of the alternative dispositions.

ORS 161.341 governed hospital commitment by PSRB at the initial hearing, and ORS 161.336 governed conditional release at that stage.[8] If PSRB found the person dangerous and not a proper subject for conditional release, it was mandatory ("shall") that PSRB commit the person to a state hospital. ORS 161.341.[9] Six months later and no more often than once every six months thereafter, the person could apply for discharge or conditional release, ORS 161.341(4) and (5), and, regardless of application, PSRB was required to review the commitment at least once every two years. ORS 161.341(6).[10]

---

[6] Former ORS 161.336(1) was amended and now appears as ORS 161.327; see fn. 5.

[7] This section now appears unchanged as ORS 161.336(10).

[8] These sections now cover conditional release or hospitalization after the trial court makes the initial dispositional decision.

[9] ORS 161.341(1) provided:

"If the board finds that the person presents a substantial danger to himself or others and that he is not a proper subject for conditional release, the board shall order him committed to a state hospital designated by the Mental Health Division for custody, care and treatment. The period of commitment ordered by the board shall not exceed the maximum sentence the person could have received had he been found responsible."

[10] ORS 161.341(4) and (6) were amended in 1979 to change the six-month period for initial application for conditional release or discharge to three months and to provide that in no case shall a person be held in the hospital for more than six months from the date of the court's commitment order without a hearing by the PSRB to determine whether the person should be conditionally released or discharged.

If, however, PSRB determined that the person, although dangerous, could be adequately controlled with supervision and treatment if conditionally released and that such supervision and treatment was available, then PSRB had discretion ("may") to release the person to a designated person or agency. ORS 161.336(2).[11] A conditionally released person could apply for modification of conditions or for discharge at any time, but no more often than once every six months, ORS 161.336(8)(a). Other subsections provided for conditions of release, continuing supervision, reporting, review, hospital commitment and discharge.

There was no authority under these statutes for PSRB at its initial hearing to overrule the trial court by discharging the person. The authority for discharge existed only thereafter during the course of PSRB's continuing supervisory functions.

Confusion exists because both ORS 161.341(1) and 161.336(2) began with the phrase, "If the board finds [or 'determines'] that the person presents a substantial danger to himself or others * * *" but went on to specify the different findings which support hospitalization or conditional release. This bit of drafting cannot be read literally to require a new finding of dangerousness. Read in the context of the entire statutory scheme, at least three reasons suggest that the legislature did not intend to require that PSRB make an independent finding of dangerousness at its initial hearing: (1) no more than 20 days before, dangerousness will have been found by the trial court as a requisite for having ordered the commitment; (2) there was no implication elsewhere in the statutes or in any of the legislative history that PSRB was

---

[11] ORS 161.336(2) stated in pertinent part:

"If the board determines that the person presents a substantial danger to himself or others but that he can be adequately controlled with supervision and treatment if he is conditionally released and that necessary supervision and treatment is available, the board may order him conditionally released, subject to those supervisory orders of the board as are in the best interests of justice, the protection of society and the welfare of the person. The board may designate any person or state, county or local agency the board considers capable of supervising the person upon release, subject to those conditions as the board directs in the order for conditional release."

intended to review that trial court finding *de novo* at its initial hearing; and (3) PSRB was given authority to choose between only two dispositions at this stage and dangerousness was a predicate for both of them. Therefore, we conclude that the statutory reference to PSRB's finding or determination of dangerousness was a drafting redundancy rather than an additional procedural prerequisite for PSRB's initial action. Although PSRB was required to make independent determinations of dangerousness when it periodically reviewed the commitment, its role at the initial hearing stage was simply to recognize that the person was dangerous to himself or others because the trial court had already adjudicated that fact.[12] *See Cardwell v. PSRB,* 38 Or App 565, 590 P2d 787 (1979).

We therefore conclude from this review of the statutory scheme that the only issue before PSRB at the initial hearing under the prior legislation was whether the person, although dangerous, "can be adequately controlled with supervision and treatment if he is conditionally released and * * * necessary supervision and treatment is available" outside a hospital. If so, and only if so, PSRB had discretion to order conditional release.

Petitioner challenges PSRB's findings that she has a mental disease or defect and that she presents a substantial danger to herself and others. She contends in a well-briefed argument that these findings are invalid because they are not supported by substantial evidence and because they are based upon a constitutionally impermissible standard of proof, preponderance of evidence. Because we conclude that PSRB was not authorized or required to make new findings of mental disease or defect and dangerousness

---

[12] This interpretation of the role of the PSRB at the initial hearing is consistent with the subsequent legislative change. The 1979 amendment placing responsibility for the initial decision whether to commit or conditionally release in the trial court was made because the 20-day hearings had become burdensome for the PSRB. Hearings on HB 3016 before Senate Judiciary Committee, 60th Or. Legis. Ass'y (May 30, 1979), testimony of Jeffrey L. Rogers for the Psychiatric Security Review Board, proponent of the bill, Tape 44, Side 2 at 1028. Thus, under the new statutes there would continue to be no redetermination of mental disease or defect and dangerousness by the PSRB before the initial dispositional decision was made, the only change is in the body making the initial dispositional decision. A redetermination of petitioner's condition will only be made by PSRB as part of its continuing supervisory function, as under the old statute.

at the initial hearing stage, its findings to that effect were superfluous. The trial court findings on those issues cannot be challenged in this proceeding, and we assume they were lawfully made. Even assuming plaintiff's challenges to the superfluous findings of the PSRB order to be well-taken, the remainder of the order is controlling and it is not challenged.[13]

The Court of Appeals held that the PSRB findings of mental disease or defect and dangerousness were not supported by substantial evidence. That holding was based upon an erroneous application of ORS 161.351(1) and (2) to this initial hearing order. Those sections provided:

> "(1) Any person placed under the jurisdiction of the Psychiatric Security Review Board pursuant to ORS 161.336 or 161.341, shall be discharged at such time as the board shall find by a preponderance of the evidence that the person is no longer affected by mental disease or defect or, if he continues to be so affected, that he no longer presents a substantial danger to himself or others which requires regular medical care, medication, supervision or treatment,

> "(2) For purposes of this section, a person affected by a mental disease or defect in a state of remission is considered to have a mental disease or defect. A person whose mental disease or defect may, with reasonable medical probability, occasionally become active and when it becomes active will render him a danger to himself or others, shall not be discharged. The state has the burden of proving by a preponderance of the evidence that the person continues to be affected by mental disease or defect and he continues to be a substantial danger to himself or others. The person shall continue under such supervision and treatment as the board deems necessary to protect the person and others."[14]

The Court of Appeals held:

---

[13] This is not to say that the PSRB finding regarding the availability of supervision and treatment in the community is impeccable. The form of that finding is subject to challenge because it sets out findings of ultimate facts but no findings of the primary facts as required by ORS 183.470(2). *See Wright v. Insurance Commissioner,* 252 Or 283, 290-91, 449 P2d 419 (1969).

[14] ORS 161.351 is unchanged by the 1979 amendments.

"* * * The person could also be discharged after this initial hearing should the board then determine that the person has no mental disease or defect or is not substantially dangerous to self or others. ORS 161.351(1). * * * The initial hearing before PSRB appears to involve an independent determination by PSRB of the mental condition at the time of the hearing of the person placed in its jurisdiction by the court. * * * "

Interpreted in its statutory context, it is apparent that ORS 161.351 was intended to apply to periodic review hearings rather than to the initial hearing. As we noted above, ORS 161.336(1) specified that PSRB's only function at the initial hearing was "to determine whether the person is to be committed or conditionally released." There was no provision for discharge as a permissible action at that stage. Moreover, ORS 161.351(1) refers to a finding regarding mental disease or defect, an issue that is clearly not before PSRB at the initial hearing. That reference is evidence that the legislature was referring to subsequent hearings at which the continued existence of mental disease or defect would be an issue. Similarly, the concluding provision of subsection (2) of ORS 161.351 that "[t]he person shall *continue* under such supervision and treatment as the board deems necessary to protect the person and others" (emphasis supplied) is further evidence that the legislature intended to refer to review hearings rather than the initial hearing. Accordingly, we conclude that the specific statutes, ORS 161.336(1) and (2) and 161.341(1), governed the initial hearing and that ORS 161.351 applied only to subsequent hearings. The Court of Appeals erred in relying upon the latter statute.

This opinion is concerned with the law governing the initial hearing. It is appropriate to clarify what this opinion does not deal with. Because this is not an appeal, we express no opinion as to the actual regularity of the post-verdict procedures in the trial court or as to the constitutionality of the statutes which govern those procedures. The arguments of the parties are based in part upon the statutes governing subsequent proceedings in the course of the continuing supervision by PSRB of persons committed to its jurisdiction. We need not consider those

statutes in this case. Because certain problems are apparent, however, these statutes could benefit from legislative reexamination.[15]

Because the portion of PSRB's order which is challenged is superfluous and because the essential portion of the order concluding that plaintiff is not suitable for conditional release and that alternative supervision and treatment are not available is not challenged on review, we uphold the order.

Reversed.

---

[15] For example, upon an application for conditional release, modification or discharge, or upon periodic review, ORS 161.336(8)(a) (renumbered 161.336(7)(a) in 1979) and 161.341(5) place the burden of proving his fitness upon the committed person, but ORS 161.351(2) provides that the state has the burden of proof of the facts which justify continued commitment.