Argued April 19, affirmed May 28, petition for rehearing
denied June 29, petition for review denied August 10, 1971

WRIGHT, *Appellant, v.* BATESON,
INSURANCE COMMISSIONER, *Respondent.*

485 P2d 641

*Robert J. Wright,* Springfield, *in propria persona,*
argued the cause and filed the brief for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

## FOLEY, J.

The petitioner's license as an insurance agent was suspended for one year by the Insurance Commissioner of the Department of Commerce. Pursuant to the provisions of ORS ch 183 (Administrative Procedures Act), the petitioner appealed the Insurance Commissioner's suspension order to the Circuit Court of Lane County. From the circuit court order affirming the suspension, the petitioner has appealed to this court.

Petitioner was a licensed insurance agent in Oregon. On or about July 28, 1966, he mailed to between 40 and 50 ICOA insurance policyholders a letter which read:

> "1974 North 16th Street
> Springfield, Oregon 97477

"ICOA Policyholder:

"Remember the coupon policy that you purchased from the ICOA Life Insurance Company of Salem, Oregon. The one where the salesman told you what a fantastic investment it would be—TAX-FREE DIVIDENDS, SIMILAR TO STOCK, ABSOLUTELY GUARANTEED BY CONTRACT. You know the story that you heard.

"These policies were misrepresented to you and you are entitled to get your money back *plus* in-

terest. You will, however, need the services of a good attorney. If you will either write to me or call me on the telephone, I will give you the name of an attorney in your area that is familiar with these cases and who has all the necessary evidence to win your case.

"Don't blame the agent that actually sold you this program. The sales literature and method of presenting it was furnished to him by the company. He sold it in the manner in which management instructed it to be sold. Some of the literature and the method of presenting it has proven to be erroneous and contained numerous misrepresentations. These are the exact reasons why our State Insurance Department ordered this type of policy to be removed from the Oregon market.

"The ICOA Life Insurance Company acquired approximately 80% of its growth through the sale of this type of program. Naturally, they would have liked to continue to deceive the public and even went so far as to file an injunction against our State Insurance Commissioner in hopes that they could continue to sell this policy. Although the court upheld ICOA, our legislature passed new laws granting the Insurance Commissioner the authority that he needed to stop ICOA's sales practices.

"On July 15, 1966, a judgment, in the amount of $5,477.63, was obtained against the ICOA Life Insurance Company. $794.13 of this amount represents 6% interest from the time the policies were originally purchased.

"File your suit soon. There may NOT be enough money to satisfy the latecomers.

Sincerely yours,

/s/  Robert J. Wright
Robert J. Wright
Ex-ICOA General Agent

"P.S. Phone 746-1984. No Collect Calls Please."
In addition petitioner sent a communication to one
Ted Jaross which read:

"Memo

"TO: Ted Jaross

"FROM: Bob Wright

"SUBJECT: ICOA

"Cant [sic] fight them any longer. So I decided
to break them. Im [sic] selling my stock before the
price goes down to 5¢.

"The enclosed letter is going to over 2,000 policy-
holders and everyone of them should collect.

"* * * * *

"I doubt very much if ICOA will even exist 12
months from now. Im [sic] notifying all my friends
to enable them to get a head start on the rush.
Thanks for your support in the past.

Sincerely yours,<br>/s/ Bob Wright"

These letters were received by a number of
ICOA policyholders. The Insurance Commissioner
found after hearing that the letters contained mis-
leading representations as to the financial condition
of the insurance company. The Commissioner there-
upon concluded that the petitioner's action constituted
unfair trade practices under the insurance law in
force at the time of the mailing (ORS 736.815 (3), (4)
and (5), 1965 Replacement Parts).① The Commissioner

---

① ORS 736.815:

"The following are defined as unfair methods of competition
and unfair and deceptive acts or practices in the business of
insurance:

"* * * * *

"(3) Making, issuing, circulating, or causing to be made,
issued or circulated, any estimate, illustration, circular or

632

then concluded that the petitioner's conduct was in violation of the insurance laws of the state in force at the time and consequently his license was suspended for one year pursuant to ORS 736.465 (1)(e).⁹ The

statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance.

"(4) Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading.

"(5) Making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting or encouraging the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature which is false, or maliciously critical of or derogatory to the financial condition of an insurer, and which is calculated to injure any person engaged in the business of insurance.

"* * * * *."

⑨ ORS 736.465:

"(1) The commissioner, after notice, and for cause shown shall revoke, or suspend for not exceeding one year, the license of any agent or solicitor, or refuse to renew any agent's or solicitor's license on application therefor, or refuse to issue any agent's or solicitor's license upon an original application therefor, if it is evident that:

"* * * * *

"(e) The agent is conducting his business in such a manner

suspension was reviewed by the circuit court, affirmed, and the order of the circuit court was appealed to the Oregon Supreme Court. The Supreme Court found the Insurance Commissioner's findings of fact incomplete and remanded the case to the Insurance Commissioner for further proceedings. *Wright v. Insurance Commissioner*, 252 Or 283, 449 P2d 419 (1969). Pursuant to that decision, the Commissioner reviewed the record and made new findings and conclusions in accordance with that record. A summary of these findings and conclusions is:

### Findings of Fact

(1) Petitioner was a licensed insurance agent.

(2) Petitioner wrote and mailed the letters concerning ICOA.

(3) The letters were received by some of the addressees.

(4) ICOA maintained the required paid-up capital and surplus.

### Ultimate Facts

(1) The letters were sent to policyholders by petitioner.

(2) The letter was misleading and deceptive.

(3) The letter was maliciously disseminated.

### Conclusions of Law

Petitioner's conduct was an unfair trade practice in violation of ORS 736.815⑧ and, consequently, a violation of the provisions of the insurance law

---

as to cause injury to the public and those dealing with him, or has violated any provision of the insurance laws of this state;

"* * * * * *"

⑧ ORS 736.820:

"No person shall engage in this state in any trade practice which is defined in ORS 736.815 as an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

warranting the one-year suspension of petitioner's insurance agent's license.

Petitioner has designated in his brief what he calls assignments of error but they are, in fact, separate arguments in support of his position. Many of the matters are not properly the subject of judicial review of administrative orders, and many of the "assignments" were not presented to the trial court. Petitioner claims that the statutes under which his license was suspended are unconstitutional or, as applied in this case, restrict his freedom of speech and that he has been denied due process of law under the United States Constitution.

Judicial review of administrative action is limited to whether or not there is substantial evidence to support the findings. The court does not try the case de novo. *Bay v. State Board of Education*, 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963). We have reviewed the record. The order of the Insurance Commissioner suspending the petitioner's license was based upon substantial evidence and the ultimate facts found supported the conclusions of law which resulted in the suspension. Adequate procedural safeguards were provided for and exercised by petitioner. There was no denial of due process. Petitioner's freedom of speech was not unconstitutionally restricted. He merely ran the risk of having his license suspended if the communications violated a valid, reasonable provision of the insurance laws of the state. The Commissioner, within the ambit of authority and responsibility entrusted to him by the legislature, found that they did. Petitioner's objections relate to matters placed within the discretion of the Commissioner by the legislature and not to the inadequacy of the evidence to support

the findings nor to the failure of the findings to support the conclusions of law.

Affirmed.