Argued May 30, affirmed July 7, 1972

STEBBINS, *Appellant, v.* DEPARTMENT OF COMMERCE, *Respondent.*

499 P2d 350

*Lloyd V. Weiser,* Portland, argued the cause for appellant. With him on the briefs were Weiser & Young, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and John W. Burgess, Special Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C.J.

The State Insurance Commissioner determined that petitioner, an insurance salesman, had violated an Insurance Division rule and ordered that he cease and desist from such conduct. Petitioner sought review in the circuit court, which affirmed the Commissioner. Petitioner has further appealed, urging that the Commissioner's finding is not supported by substantial evidence and that the Commissioner's decision is invalid due to a variety of procedural errors.

In September of 1969, a Mr. Schlosser contacted petitioner in regard to surrendering two life insurance policies for their cash value. Petitioner advised Mr. Schlosser to purchase a new $50,000 policy. Mr. Schlosser agreed to do so, and petitioner prepared the necessary application form. According to Division rules, prior to permitting Mr. Schlosser to sign the application, petitioner should have given him a statement which compared the cost, coverage and other features of his new policy with the same information concerning the two policies he was surrendering (hereinafter referred to as a "comparison statement").

Specifically, the relevant Insurance Division replacement rules provide:

"* * * [N]o person shall replace, or offer or propose to replace, existing life insurance without complying with the provisions of this Rule." OAR 836-80-010.

"* * * 'Replace' * * * includes any transaction under which new life insurance is to be purchased and existing life insurance is to be * * * surrendered * * *." OAR 836-80-005(1).

"Each life insurance agent shall: (1) Obtain from the applicant for each life insurance policy an

answer to the [following] question * * *." OAR 836-80-025.

" 'Do you intend the replacement or change of any of your existing life insurance policies in connection with this application for new life insurance?' " OAR 836-80-020(3).

"Each life insurance agent shall: * * *

"(2) If such answer is 'yes', give the applicant prior to his signing the policy application a completed [comparison statement as described above] * * *; and

"(3) Submit a copy of the [comparison statement] * * * to the insurer with the policy application." OAR 836-80-025.

There is no dispute as to the fact that as a part of the September 1969 transaction petitioner failed to give Mr. Schlosser a comparison statement and failed to forward a copy thereof to the insurer with Mr. Schlosser's application.

In January of 1970, for reasons not germane to the questions here presented, Mr. Schlosser wrote the Division making certain complaints about petitioner. Although Mr. Schlosser withdrew his complaints about a month later, the Division proceeded to investigate petitioner's failure to prepare the required comparison statement during the September 1969 transaction.

As a result of this investigation, on October 21, 1970, the Commissioner entered the following Cease and Desist Order against petitioner:

"* * * * *

"That on or about September 2, 1969, William M. Stebbins did advise Charles M. Schlosser of Portland, Oregon, to surrender two ordinary life insurance policies then in force, and did take appli-

cation for and cause to be issued a life insurance policy as a replacement thereof without leaving with the policyholder a written, signed, and dated statement which fully and correctly compared the terms, conditions and benefits of the existing policies to the proposed policy as required by OAR 836-80-005 to OAR 836-80-030.

"Such act constitutes a violation of ORS 746.085 and OAR 836-80-005 to OAR 836-80-030.

"II

"YOU ARE HEREBY ORDERED to cease and desist from the practices set out in the statement of charges above and any other conduct which is injurious to the public.

"* * * * * *."

Petitioner then requested an administrative hearing on these charges, which was held December 8, 1970. The Insurance Commissioner affirmed the portion of the Cease and Desist Order concerning petitioner's failure to prepare a comparison statement. He also found:

"No evidence appears of further violation on the part of the respondent, however, and the cease and desist order will therefore be modified by deleting the phrase 'and any other conduct which is injurious to the public' * * *."

■ Our review of the Commissioner's findings is limited to the question of whether they are supported by substantial evidence. *Wright v. Bateson,* 5 Or App 628, 485 P2d 641, Sup Ct *review denied* (1971), *cert denied* 405 US 930 (1972). From petitioner's own admission that he never prepared the comparison statement required by the above-quoted rules it seems obvious there is substantial evidence to support the Commissioner's finding of a violation of those rules.

■ Petitioner resists this conclusion by arguing the rules only apply when an agent *urges* an applicant to purchase new insurance and surrender his existing insurance. While it is true the word, "urged," does appear at one point in the Division's insurance replacement rules,[1] we believe it clear that the requirements of those rules are not so limited, but, instead, as they unequivocally and unambiguously state, apply to any "replacement" transaction in which existing insurance is terminated and new insurance purchased.

In fairness to petitioner it should be pointed out that there is no suggestion in the record that he was in any way acting in bad faith in the September 1969 transaction with Mr. Schlosser. All that has been shown is a careless violation of a somewhat technical rule.

Petitioner's procedural arguments for reversal are: (1) he was denied a "speedy trial"; (2) he was denied the opportunity to confront witnesses against him; (3) it was improper for the October 21 Cease and Desist Order to direct he desist from "any other conduct which is injurious to the public"; and (4) it was improper for the Commissioner to notify insurance companies represented by petitioner of the entry of that order before it became final.

---

[1] When an insurance agent is required to give a life insurance applicant a Comparison Statement, Division rules also provide the agent should give the applicant an additional form entitled, "NOTICE TO POLICYHOLDERS REGARDING REPLACEMENT." OAR 836-80-025(2). The rules contain a sample form approved for use in this context. OAR 836-80-030, Exhibit B. The pertinent part of the Division's sample form reads:

"1. When you are *urged* to purchase life insurance and to surrender, lapse or in any other way change the status of your existing life insurance, the agent is required by the Oregon Insurance Commissioner to give you a written and signed comparison statement. This statement must set forth the pertinent facts of the proposal and the advantages and disadvantages to you of making the change." (Emphasis supplied.)

■ Petitioner's "speedy trial" arguments do not relate to the 1½-month period between the October 21 Cease and Desist Order and the December 8 hearing; rather, they relate to the period between January and October when the Division was investigating this case. Petitioner contends this seems to be an unusual length of time to take to investigate a case such as this, that the record contains no explanation for this period of delay, and that the Commissioner could have and should have acted more expeditiously. With all this we agree. However, petitioner has cited no cases, nor have we found any, which invalidate an administrative decision solely on the ground that there was a period of unreasonable delay during an agency investigation that preceded the initiation of formal proceedings.

■ Likewise, petitioner's argument that he was denied the opportunity to confront witnesses against him also relates to the period between January and October while the Division was investigating this matter. There is no merit to this contention. Due process was satisfied when petitioner confronted the witnesses and cross-examined them extensively at the December 8 hearing.

■ Concerning the language, "any other conduct which is injurious to the public," in the October 21 Cease and Desist Order, it is apparently conceded that there was never any evidence that petitioner had engaged in any "other" misconduct than his omission in regard to the required comparison statement. The only explanation for the presence of this language in the Order is that the Commissioner "normally" inserts it in all orders, presumably as a form of "boiler-plate." We agree with petitioner that this practice seems unwarranted. However, since, as stated above, the Com-

missioner deleted this language in his final decision, it is difficult to understand why petitioner raises this issue in this appeal. If it is petitioner's thesis that the presence of this language in the original Cease and Desist Order invalidates the otherwise proper determination that petitioner did not comply with the replacement rules, we know of nothing that would support such a thesis and cannot accept it.

It is also difficult to understand how the issue concerning the forwarding of copies of the original Cease and Desist Order by the Commissioner to the insurance companies represented by petitioner may be raised in this appeal. While petitioner's arguments that such conduct is unauthorized, unwarranted, and injurious to his livelihood are not insubstantial, again we do not believe this conduct invalidates the determination that petitioner failed to comply with the replacement rules. That is the only relevant issue at bar.

Affirmed.