Argued March 22, resubmitted In Banc on record and briefs April 21, reversed April 26, reconsideration denied June 9, petition for review allowed June 22, 1976
See 276 Or 377, 554 P2d 1008

U.S. SOIL et al, *Petitioners,*
*v.*
OREGON STATE DEPARTMENT OF AGRICUL-
TURE et al, *Respondents.*
(CA 5517)
548 P2d 1338

*Thomas B. Brand,* Salem, argued the cause for petitioners. With him on the brief were Brand, Lee, Ferris & Embick, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondents. With him on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

LANGTRY, J.

## LANGTRY, J.

Petitioners appeal from the final order of the Department of Agriculture refusing to register their product with the brand name "Planters II Trace Mineral Fertilizer" pursuant to ORS 633.361. Such a registration, under that statute, is necessary in order to place such product in Oregon trade. The Department had accepted the same product under the same or an essentially similar name for several previous years. The ground for the refusal is that the word "fertilizer" is included in the title. The petitioners had requested a hearing after the first informal refusal to register the product.

After the hearing the hearing officer made findings of fact that the application for registration of this product is one for the registration of an "agricultural mineral," that the term "fertilizer" has received a variety of uses, definitions and connotations, and that the use of the term "fertilizer" in connection with this "agricultural mineral" is "misleading labeling and a misrepresentation of an agricultural mineral in Oregon." He concluded that the product is required to be registered as an "agricultural mineral"; that there is a misrepresentation in the use of the words "trace mineral fertilizer" inasmuch as "ORS chapter 633 has defined what is to be construed as a fertilizer in this state and has designated it as a 'commercial fertilizer'"; and that the legislature has also defined what is to be construed an "agricultural mineral" in this state. The order refusing registration followed. There is no dispute in the evidence. The question presented to us is purely one of statutory construction. Hence, we may reverse in the context of this case only if the order is unlawful in substance, that is, if it incorrectly construes or applies the regulatory statute involved. ORS 183.482(8)(a).

ORS 633.310(1) defines "agricultural minerals" as

"* * * mineral substances, mixtures of mineral substances, and mixtures of mineral and organic substances, except animal manures, containing less than five

[ 317 ]

percent in available form of nitrogen, phosphorus pentoxide or potassium oxide, singly, collectively or in combination, designed for use principally as a source of plant food * * *."

ORS 633.310(4) defines "commercial fertilizer" as

"* * * any substance, or any combination or mixture of substances, designed for use principally as a source of plant food, in inducing increased crop yields or plant growth, or producing any physical or chemical change in the soil and shall contain five percent or more of available nitrogen, phosphorus pentoxide or potassium oxide, singly, collectively or in combination, except hays, straws, peat and leaf mold, and unfortified animal manures."

ORS 633.420 provides that:

"No person shall make any false or misleading representation in regard to any commerical fertilizer, agricultural minerals * * * offered * * * for sale by him in this state, either as principal or agent. No person shall use any misleading or deceptive brand or grade in connection therewith."

The petitioners argue that if their label were "Planters II Trace Mineral Commercial Fertilizer" it would be a prohibited trade or brand name for "agricultural minerals" because of the definitions in ORS 633.310(1) and (4). But, they say, inasmuch as the word "commercial" does not precede the word "fertilizer" it is not prohibited.

One of the sacks in which petitioners market their product is in evidence. Besides the trade name and emblem it relates:

"MINIMUM GUARANTEED ANALYSIS

| | | | |
|---|---|---|---|
| Calcium Ca | 5.00% | Cobalt Co | 0.0005% |
| Magnesium Mg | 0.50% | Molybdenum Mo | 0.0005% |
| Sulfur S | 5.00% | Iron Fe | 0.40% |
| Boron B | 0.02% | Guarantees Expressed in Elemental Form." | |

There is no challenge to this analysis.

■ There can be no doubt but that the trace minerals in petitioners' product are a "fertilizer." Webster's New

Twentieth Century Dictionary 677 (unabridged 2d ed 1964) defines the word as "* * * any material put on or in the soil to improve the quality or quantity of plant growth, as manure, chemicals, etc. * * *" In petitioners' exhibit, California Fertilizer Association, Soil Improvement Committee, *Western Fertilizer Handbook* (4th ed 1973), published in cooperation with the University of California's Agricultural Experiment Station it is stated on pp 98 et seq that there are 16 plant food elements essential to normal plant growth. Included among these are the three necessary *plant foods:* nitrogen, phosphorus and potassium. The others are referred to as "agricultural minerals." On p 131 it is said:

> "The term secondary, in plant food language, is applied to the elements calcium, magnesium, and sulfur. The micro element group boron, copper, iron, manganese, molybdenum, zinc, and chlorine are called trace or micro plant food elements. These two designations denote the relative nutrient order of importance of these so-called *secondary and fertilizer components,* as compared with the primary components, nitrogen, phosphorus, and potassium." (Emphasis supplied.)

We conclude from this that all of the named elements in petitioners' product except cobalt (extremely minor) are properly referred to therefore as "fertilizer components."

Animal manures are excluded by the definitions in ORS 633.310 from being classified as "agricultural minerals" or "commercial fertilizer." Yet, animal manures are fertilizer. Indeed, in a case involving this very subject, Blumer v. Rauer, 69 Cal App 195, 230 P 964 (1924), a statute concerning "commercial fertilizer" which excluded animal manure from the term was being construed. The animal manure was referred to as fertilizer throughout the opinion.

The construction which the Department has placed upon the words "commercial fertilizer" disallows the descriptive word "fertilizer" for everything except fertilizers which contain 5 percent or more of chemical

nitrogen, phosphorus or potassium. Therefore, to be consistent, it could allow no one to sell animal manure in Oregon and describe it as fertilizer. We have found nothing to indicate that the legislature had such an intention.

There were some early regulatory statutes concerning commercial fertilizer in Oregon, but the statutes from which we have quoted were enacted in their present general outline first as Oregon Laws 1939, ch 549. The definitions which we have quoted from ORS 633.310 were essentially the same in that Act as they are now. There is no legislative history available in the legislative archives to help in determining what was intended.

The hearing officer's findings essentially were that because the statute defines "agricultural minerals" and "commercial fertilizers," "agricultural minerals" may not be called fertilizer in Oregon. The order gives no significance to the word "commercial" preceding the word "fertilizer" in the definition. The dissenting opinion herein, by ignoring the same word in the defining statute, also would give it no significance in violation of fundamental rules of statutory construction. *See* ORS 174.010; *Cabell v. Cottage Grove,* 170 Or 256, 130 P2d 1013, 144 ALR 286 (1942). We are satisfied that the construction placed on the word "fertilizer" by the Department defies the plain meaning of the word. "* * * [W]ords of common use are ordinarily to be taken in their natural, plain and obvious signification * * *." *City of Portland v. Meyer,* 32 Or 368, 370, 52 P 21, 67 Am St R 538 (1898). In *Heller v. Magone,* 38 F 908, 911 (CCSDNY 1889), *reversed on other grounds* 150 US 70, 14 S Ct 18, 37 L Ed 1001 (1893), where the court was construing a statute concerning taxation of imported "manure," and held the term is synonymous with "fertilizer," the court said:

> "The more frequently we are called upon to interpret the statutes, the greater likelihood there is of developing a tendency to overstrained construction. It is wholesome occasionally to turn back to first principles * * * to get

at the * * * meaning expressed in a statute, the first resort in all cases is to the natural signification of the words * * *."

The components in petitioners' product essentially are secondary and "trace minerals." They are "fertilizer." It is not "false," "misleading" or "deceptive" (ORS 633.420) to call them what they are—in the aggregate, "trace mineral fertilizer."

Reversed.

**SCHWAB, C. J.,** dissenting.

The statutes relevant to this case are ORS 633.310 to 633.495. Under these statutes, all manufactured or processed products sold for addition to the soil as plant food are classified as either commercial fertilizer, agricultural minerals, or lime.[1] This classification scheme permeates the statutory requirements for registration, ORS 633.361, labeling, ORS 633.320 — 633.340, testing, ORS 633.390, etc.

The distinction between a fertilizer and an agricultural mineral is whether it contains, respectively, more or less than 5 percent of nitrogen and/or phosphorus and/or potassium. *Compare* ORS 633.310(1) *with* 633.310(4). Under these definitions, petitioners' product here in question is an agricultural mineral.

In applying ORS 633.420, which prohibits misleading labeling, I think it was reasonable for the Department of Agriculture to conclude that it was potentially misleading for petitioner to market their agricultural mineral as a fertilizer. A consumer could conceivably purchase petitioners' product, if labeled as fertilizer, without realizing it is different from a competitor's product that is literally fertilizer under ORS 633.310(4).

In reversing the Department's determination to

---

[1] The statutes expressly exempt certain natural soil amendments that are not man-made, specifically, sand, soil, manure, hay, straw, peat and leaf mold. This would seem to be a sufficient answer to the majority's concern about whether it is possible to market manure as a fertilizer.

that effect, the majority relies upon the dictionary and a trade association publication. I agree that in common usage, petitioners' product can be called a fertilizer. But the question is not common usage, but the specific statutory definition in ORS 633.310(4); I am not aware of any rule that requires the legislative assembly to define words the same as does Webster. And under the statutory definition and the statutory scheme in which it appears, I conclude, as did the Department, that the legislative assembly intended that manufactured products containing less than 5 percent of the three specified elements cannot be labeled and marketed in Oregon as fertilizer.

I respectfully dissent.

THORNTON, J., joins in this dissent.