# U. S. SOIL, INC. et al, *Respondents,*

*v.*

# OREGON STATE DEPARTMENT OF AGRICULTURE et al, *Petitioners.*

554 P2d 1008

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for petitioners. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Thomas B. Brand,* of Brand, Lee, Ferris & Embick, Salem, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and O'Connell, Holman,** Tongue, Howell, Bryson, and Lent, Justices.

LENT, J. (Pro Tempore)

---

**Holman, J., did not participate in the decision of this case.

**LENT, J.** (Pro Tempore)

Respondents market a certain product in several states and applied for registration of their brand in Oregon. The Oregon State Department of Agriculture (hereinafter "Department") denied registration by letter dated March 21, 1975. Pursuant to respondents' request, a hearing was held at which evidence was received, and the hearing officer entered his findings, conclusions and order, which were approved by the Department's director, affirming the Department's denial of respondents' application for registration. Respondents sought judicial review under ORS ch 183. The Court of Appeals reversed. 25 Or App 315, 548 P2d 1338 (1976). We granted review.

■ Review by the Court of Appeals was under ORS 183.482(8)(a), which provides for judicial reversal if the order of the Department is unlawful in substance; "that is, if it incorrectly construes or applies the regulatory statute involved." 25 Or App at 317. We conceive our scope of review to be the same.

Respondents have labeled their product "Planters II Trace Mineral Fertilizer." The Department refused registration under ORS 633.430 because the Department found this label to be proscribed by ORS 633.420:

> "No person shall make any false or misleading representation in regard to any commercial fertilizer, agricultural minerals * * * shipped, sold, offered or exposed for sale by him in this state, * * *. No person shall use any misleading or deceptive brand * * * in connection therewith."

Pertinent definitions are found in ORS 633.310:

> "(1) 'Agricultural minerals' means mineral substances, mixtures of mineral substances, and mixtures of mineral and organic substances, except animal manures, containing less than five percent in available form of nitrogen, phosphorus pentoxide or potassium oxide, singly, collectively or in combination, designed for use principally as a source of plant food, in inducing increased crop yields or plant growth, or producing any

[ 379 ]

physical or chemical change in the soil, except lime, sand and soil.

"* * * * *.

"(4) 'Commercial fertilizer' means any substance, or any combination or mixture of substances, designed for use principally as a source of plant food, in inducing increased crop yields or plant growth, or producing any physical or chemical change in the soil and shall contain five percent or more of available nitrogen, phosphorus pentoxide or potassium oxide, singly, collectively or in combination, except hays, straws, peat and leaf mold, and unfortified animal manures.

"* * * * *."

Respondents concede that their product does not meet the definition of "Commercial fertilizer" because it does not have the requisite percentage of nitrogen, phosphorus pentoxide and/or potassium oxide. They further concede that their product is, in fact, an "Agricultural mineral," as above defined.

Respondents' contention, in essence, is that their brand uses the word "Fertilizer" in its generic sense and that because it does contain plant nutrients they are entitled to use that word. They say that because their brand does not use the term "Commercial fertilizer," it is not false, misleading, or deceptive under ORS 633.420.

A search of ORS 633.310 to 633.495 discloses a reference by the legislature to the term "fertilizer" in two places. See ORS 633.320(5) and 633.485(2). It is obvious from the context that the legislature there uses the word "fertilizer" as being synonymous with "commercial fertilizer." To us, it appears merely a matter of legislative oversight that the modifying word, "commercial," is not used in those sections.

One of the obvious purposes of ORS 633.310 to 633.495 is to distinguish between substances defined as agricultural minerals and those defined as commercial fertilizers and to protect the consumer from being misled in choosing among products to be added to the soil for agricultural purposes.

■ We find that respondents' labeling of their product as a "Fertilizer," even though modified by the other words in the brand, would tend to mislead consumers into believing that the product does contain the nutrient elements, in kind and amount, included in the definition of "Commercial fertilizer." The Department's order was not unlawful in substance and the Department properly refused to register respondents' brand.

■ From 1971 to March 21, 1975, the Department accepted respondents' applications for registration. Respondents urge that the Department, therefore, "cannot be heard now to contend" that the label is false and misleading. They cite *Carnation Co. v. Dept. of Agriculture,* 7 Or App 223, 488 P2d 1385 (1971) for the proposition that an agency's interpretation of its own rules (regulations) is highly persuasive. The record is clear that the Department's prior acceptance of respondents' applications for registration was not on the basis of an interpretation of its regulations. Past acceptance resulted from a failure to consider whether respondents' label violated ORS 633.420.

■ Respondents, also, contend that the actions of the Department "demonstrate clear arbitrariness and lack of due process of law," because prior to formal hearing, the Department notified respondents by letter that registration of the brand was denied. Our review shows that, pursuant to their demand, respondents were accorded a full, fair hearing prior to final agency action. That action was not arbitrary, and respondents were accorded due process of law.

Reversed.